IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: SYNGENTA AG MIR 162          )        MDL No. 2591
CORN LITIGATION                     )
                                    )        Case No. 14-md-2591-JWL
This Document Relates To:           )
                                    )
*The DeLong Co., Inc. v. Syngenta AG, et al.*,  )
No. 17-2614-JWL                     )
_____)

## MEMORANDUM AND ORDER

This single case within this multi-district litigation (MDL) presently comes before the Court on the motion by defendants (collectively "Syngenta") for summary judgment (Doc. # 106). For the reasons set forth below, the Court concludes that this action is barred by the applicable statute of limitation.[1] The Court therefore **grants** the motion, and Syngenta is awarded judgment on plaintiff's claims.

## I.   Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue

---

[1] In light of this conclusion, the Court declines to address Syngenta's other arguments for summary judgment on particular claims.

of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

2

## II.   **Analysis**

### A.   *Accrual of the Cause of Action*

Plaintiff The DeLong Co., Inc. ("DeLong") is an exporter of Dried Distillers Grains with Solubles ("DDGS"), a corn by-product.  DeLong's sole remaining claim is one of negligence against Syngenta.  Specifically, DeLong alleges that Syngenta was negligent in its commercialization of Vitpera and Duracade, genetically-modified corn seed products, before those products' traits were approved for import by China.  The parties agree that DeLong's negligence claim is governed by the substantive law of Wisconsin, where DeLong resides.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 4013962, at *4 n.4 (D. Kan. Aug. 26, 2019) (Lungstrum, J.) (dismissing non-negligence claims in this action); *see also In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1188 (D. Kan. 2015) (Lungstrum, J.) (substantive law of each MDL plaintiff's home state governs that plaintiff's claims).

The parties further agree that DeLong's negligence claim is governed by Wisconsin's six-year statute of limitations.  *See* Wis. Stat. § 893.52(1).  The Wisconsin Supreme Court has set forth the relevant law concerning the accrual of a tort claim as follows:

> A claim for relief accrues when there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.  A tort claim is not capable of present enforcement until the plaintiff has suffered actual damage.  Actual damage is harm that has already occurred or is reasonably certain to occur in the future.  Actual damage is not the mere possibility of future harm.

3

*See Hennekens v. Hoerl*, 465 N.W.2d 812, 815-16 (Wis. 1991) (internal quotations and citations and footnotes omitted).[2]

DeLong filed the instant suit against Syngenta on October 11, 2017. Thus, the issue is whether DeLong's negligence claim accrued before October 11, 2011. Syngenta argues that DeLong's claim is time-barred because before October 2011 DeLong already knew that Syngenta had commercialized Viptera without Chinese approval and already believed that Syngenta should be responsible for its costs incurred because of that commercialization. In response, DeLong does not dispute that by October 2011 it already knew of the allegedly negligent commercialization and the risk and possibility of harm therefrom, but it argues that it had not actually suffered harm by that date (or at least that a question of fact exists). The Court concludes that Syngenta has shown as a matter of law, based on uncontroverted evidence, that DeLong had suffered harm by that date and that DeLong's claim therefore accrued more than six years before it filed this suit.

Syngenta first points to evidence that by October 2011 DeLong was already preparing and taking steps to deal with the presence of MIR 162, the unapproved trait, in the corn supply. Bo DeLong, a vice president who was deposed as DeLong's corporate representative, testified that after DeLong learned that a product containing MIR 162 was being sold beginning in 2010 for harvest in 2011, DeLong began making preparations to

---

[2] In addition, the Wisconsin Supreme Court has adopted the discovery rule, holding that tort claims accrue on the date the injury is discovered or with reasonable diligence should be discovered. *See Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 583 (Wis. 1983). DeLong has not argued, however, that it did not discover any injury at the time of its occurrence, and thus DeLong has not argued that the discovery rule applies here.

4

have corn products brought only to certain facilities.  When asked whether there was a cost to DeLong associated with those steps, Mr. DeLong testified as follows:

> Well, we had to isolate it.  We had to have a separate dump facility. We didn't know how much we were going to receive, although we thought the amounts were going to be fairly minimal based on what Syngenta told us or what we had been told as far as the amount that was grown initially the first year.
>
> And so we basically tied up, you know, a separate dump pit, leg dryer and finished – so we had to have a dump pit, leg dryer, wet holding tank and a finished product tank that we tied up for that corn to keep it isolated.

Mr. DeLong stated that DeLong began these preparations for isolation in August or September 2011.  In addition, in August 2011, Mr. DeLong drafted a document in which he noted that Viptera had not been approved for import by China and listed a number of steps that Syngenta and others in the industry should take to prevent DDGS produced from Viptera corn from entering the export channel to China.  In the final step, Mr. DeLong stated that "[a]ll costs of all testing/diversion both on inbound corn and outbound DDGS should be to Syngenta's account."   In his deposition, Mr. DeLong answered in the affirmative when asked whether that final step reflected his belief in 2011 "that Syngenta should be responsible for reimbursing DeLong and others in the grain trade for the additional costs that DeLong was incurring as a result of dealing with the commercialization of MIR 162."  Thus, Syngenta has submitted evidence that DeLong was already experiencing deleterious effects of Syngenta's commercialization of Viptera – thereby suffering harm – by August and September 2011.

DeLong responds by noting that Syngenta has not cited evidence that DeLong had actually undertaken any of those listed steps, including testing, by October 2011.  That may

be so; but Mr. DeLong conceded in his deposition that when he drafted the document in August 2011, DeLong "was incurring" costs from the allegedly negligent commercialization. Moreover, when asked whether there were costs associated with isolation of MIR 162 corn, Mr. DeLong indicated that there were such costs by responding that the company had to "tie up" certain facilities.

DeLong also points to the fact that Mr. DeLong, when asked in his deposition whether he could roughly quantify the costs associated with DeLong's preparations for isolating certain products, answered in the negative. Moreover, in response to the instant motion, DeLong has submitted a declaration in which Mr. DeLong stated that his list of steps from August 2011 was "forward-thinking and hypothetical," that Syngenta did not undertake any of the steps listed, and that in 2011, DeLong "incurred no quantifiable costs associated with the diversion of inbound corn or DDGS or the testing of outbound corn or DDGS that were attributable to Syngenta." DeLong has not explained, however, why an inability to quantify the costs incurred does not mean that no such costs or other types of harm were incurred for purposes of determining when a cause of action accrued. The Wisconsin Supreme Court has not required quantifiable financial harm, but merely that the plaintiff suffered actual damage or harm, which may include non-monetary loss. *See Hennekens*, 465 N.W.2d at 153. As noted, Mr. DeLong conceded that DeLong "was incurring" costs at that time, and he also indicated that DeLong had incurred the cost of having to "tie up" certain resources to isolate product, which suggests that that resources (including manpower) were being diverted from other uses. Thus, Mr. DeLong conceded

6

that DeLong had incurred costs, and the fact that he could not roughly quantify those costs while sitting at his deposition does not controvert his testimony that costs had been incurred.  In his declaration, Mr. DeLong did not clarify or address at all his testimony that DeLong had tied up certain facilities by August and September of 2011 and "was incurring" costs at that time.  Nor did he state that DeLong incurred no harm or damage before October 2011.[3]  To the extent that such meaning was intended by his statement that "no quantifiable costs were associated with the diversion of inbound corn," such evidence would be in direct conflict with his deposition testimony, and the Court would reject the contrary declaration as a sham declaration.  *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2003) (sham affidavit in conflict with deposition testimony may be disregarded).  Thus, DeLong has not controverted Mr. DeLong's testimony that DeLong was already suffering harm before October 2011.

Syngenta has also submitted evidence that before October 2011 DeLong had begun insisting in its contracts for the sale of DDGS that the buyer assume all financial risk from any rejection of DDGS by China.  This is evidence that the commercialization of Viptera was already affecting DeLong's business, as it would not be reasonable to believe that DeLong was able to insist on those new risk-shifting contract terms without concessions

---

[3] Moreover, Mr. DeLong stated in his declaration that DeLong did not incur quantifiable costs for diversion or testing, but he did not address DeLong's having to insist on new contract terms or Drew McClymont's concession, which evidence is discussed below.

or some other costs to DeLong.  DeLong has not addressed this evidence in its response or controverted this evidence of a cost or harm incurred by DeLong.

Finally, Drew McClymont, a DeLong employee, conceded in his deposition that by mid-September 2011 DeLong's business had been impacted by Syngenta's commercialization of a product containing MIR 162.  DeLong argues that Mr. McClymont stated only, as a hypothetical case, that if buyers were saying that they would not buy because of the new contract term, then DeLong's business would be impacted.  The testimony was not so limited, however.  When first asked if DeLong's business had been impacted by September 2011, Mr. McClymont stated, referring to a particular correspondence, "Well, in this case yes, if she's saying that they're not going to buy from us because of this wording, that affected us."  He was then asked when DeLong was first impacted by Syngenta's commercialization, and whether it was in September 2011 or before, he answered, "Yep, obviously it was affecting it on September 16 of 2011."  A little while later in the deposition, he again confirmed that "DeLong's business was impacted by the commercialization of MIR 162 as of September 2011."  Thus, Mr. McClymont did not merely testify that DeLong's business would have been impacted if, hypothetically, customers were refusing to buy at that time; rather, he confirmed in his testimony as a general matter that the business had already been affected by that time.

Thus, Syngenta has presented evidence that DeLong suffered harm from the allegedly negligent act by Syngenta prior to October 2011.  DeLong has responded that it could not quantify those costs, but it has not explained why that fact would have precluded

it from bringing a claim against Syngenta before October 2011.  DeLong has not submitted any evidence, in the form of testimony or a declaration, that before October 2011 it did not actually incur any costs or suffer any impact to its business from Syngenta's commercialization of Viptera.  Accordingly, DeLong has not controverted Syngenta's evidence that DeLong did incur such harm.  The Court therefore concludes as a matter of law that DeLong's claim accrued more than six years before it filed suit against Syngenta.

<b>B.</b>    <i><u>Tolling</u></i>

DeLong also argues that even if it filed suit more than six years after its claim accrued, the statute of limitation was tolled during the period when Trans Coastal asserted class claims in the MDL on behalf of a putative class of exporters.  No such class was ever certified, and Trans Coastal's class claims were dropped in an amended complaint.

Syngenta notes that DeLong is essentially seeking to apply the federal *American Pipe* tolling rule in a cross-jurisdictional context.  In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the United States Supreme Court held that when class certification has been denied, the filing of the class action is deemed to have tolled the statute of limitations for those putative members of the class who then make timely motions to intervene as named parties.  *See id.* at 552-54.  In a subsequent case, the Supreme Court extended that tolling rule to apply to members of the putative class who wished to file individual suits instead of intervening in a failed class action.  *See Crown, Cork and Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983).  In this case DeLong seeks to apply such a tolling rule based on the unsuccessful class action brought by Trans Coastal.

9

The Tenth Circuit has instructed that when state law supplies the applicable statute of limitations, the Court must look to the tolling law of the particular state to determine whether to apply *American Pipe* tolling. *See State Farm Mutual Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1230 n.11 (10th Cir. 2008). Syngenta argues that *American Pipe* tolling is not allowed under Wisconsin law.

DeLong relies on two Wisconsin tolling statutes. Wisconsin's general tolling statute provides that "[a] law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies." *See* Wis. Stat. § 893.13(2). The more specific statute that applies in this case, in which DeLong relies on an action filed in a non-Wisconsin venue, provides that "[a] Wisconsin law limiting the time for commencement of an action on a Wisconsin cause of action is tolled from the period of commencement of the action in a non-Wisconsin forum until the time of its final disposition in that forum." *See id.* § 893.15(3). Thus, under either statute, tolling would be available only if an action asserting DeLong's present Wisconsin cause of action was commenced in Trans Coastal's suit in federal court.

DeLong argues that its claim was asserted in Trans Coastal's suit because that class action included the same negligence claim asserted under the laws of all states in which the putative class members resided. DeLong was not a party to that suit, however – it was not a named plaintiff, and no class was ever certified. Thus, DeLong's particular claim, by which it seeks redress for particular injuries to it, was not asserted in the class action, and

an action asserting DeLong's cause of action was not previously commenced in federal court. Thus, on their face, the tolling statutes would not permit tolling in this case.

DeLong cites *Cedillo v. TransCor America, LLC*, 131 F. Supp. 3d 734 (M.D. Tenn. 2015), in which the court applied *American Pipe* tolling to toll a statute of limitations provided by Wisconsin law, *see id.* at 744, but that case does not in fact support DeLong's position here. In *Cedillo*, Wisconsin law supplied the limitations period for one plaintiff's federal cause of action under 42 U.S.C. § 1983, and the court applied federal law in holding that *American Pipe* tolling applies to federal Section 1983 claims. *See id.* Thus, the case says nothing about whether Wisconsin tolling law includes *American Pipe* tolling.[4]

DeLong also cites an unpublished, non-precedential opinion by the Wisconsin Court of Appeals, *Sajdak v. Michaels Pipeline Construction, Inc.*, 1982 WL 171848 (Wis. Ct. App. Nov. 10, 1982) (unpub. op.). DeLong notes the *Sajdak* court's statement that if Wis. Stat. § 893.13(2) applied in that case, it "would toll" the statute of limitation based on a class action suit in which the plaintiffs were merely putative plaintiffs. *See id.* at *2. The court concluded, however, that the tolling statute did not apply retroactively and thus did not apply in that case. *See id.* Accordingly, the court had no occasion to address directly whether the statute allowed for tolling based on a prior uncertified class action (like *American Pipe* tolling). Moreover, in *Sajdak* the prior class action had been brought in a Wisconsin state court, and therefore the case did not involve the type of cross-jurisdictional

---

[4] The court cited Wis. Stat. § 893.13 only to support its conclusion that in Wisconsin (and the other states at issue there) tolling as a general matter suspends a statute of limitation instead of renewing it. *See Cedillo*, 131 F. Supp. 3d at 744 & n.6.

*American Pipe* tolling urged here.  For these reasons, the Court does not consider *Sajdak*, a non-precedential case, as providing relevant authority that Wisconsin law allows for tolling in the present case.

Thus DeLong has not shown that *American Pipe* tolling, based on a prior federal class action in which the plaintiff was only a putative class member, is authorized under Wisconsin law.  As the Court has previously ruled, in the absence of authority specifically recognizing cross-jurisdictional *American Pipe* tolling under a state's law, the Court will not import a new tolling rule into that state's limitations law.  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1082 (D. Kan. 2009) (Lungstrum, J.) (citing cases).[5] Accordingly, because no Wisconsin authority directly supports cross-jurisdictional *American Pipe* tolling under that state's limitations law, the Court will not permit such tolling in this case.

Accordingly, the Court concludes as a matter of law that DeLong's claim accrued more than six years before it filed the instant action, and DeLong has not established a

---

[5] The Court is especially disinclined to do so because cross-jurisdictional *American Pipe* tolling has been recognized in such a small minority of states.  *See Urethane*, 663 F. Supp. 3d 1082 & n.10 (noting that only two states had recognized such tolling at that time); *see also Jones v. BMW of N. Am., LLC*, 2020 WL 5752808, at *5 n.5 (M.D.N.C. Sept. 25, 2020) (noting that "few states have adopted cross-jurisdictional tolling and federal courts have been wary to extend cross-jurisdictional tolling where states have not decided the issue").

basis for tolling the applicable six-year statute of limitation.  Therefore, the present action is time-barred, and summary judgment is warranted in favor of Syngenta.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 106) is hereby **granted**, and defendants are awarded judgment on plaintiff's claims.

IT IS SO ORDERED.

Dated this 3rd day of February, 2021, in Kansas City, Kansas.

_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge

---

[6] DeLong does not dispute that if it suffered harm from the commercialization of Viptera more than six year before filing suit and no tolling applies, summary judgment is appropriate with respect to DeLong's entire suit.  DeLong claims that Syngenta acted negligently with respect to its commercialization of both Viptera and Duracade, but DeLong insists in its response brief that its negligence claim may not be subdivided between Viptera and Duracade, and that the commercialization of Duracade did not cause it any separate harm.  Thus, the Court concludes that DeLong's entire claim accrued prior to October 2011, by which time it had already suffered harm from the commercialization of Viptera.

13